GEDDES et al. v. NORTH OGDEN IRR. CO. et al.

No. 1807. Decided January 5, 1908 (94 Pac. 822).

CONTEMPT—DISOBEDIENCE OF DECREE—EVIDENCE. Evidence in contempt proceedings *held* to show that construction of a dam did not interfere with water rights of another in disobedience of decree.

STRAUP, J., dissenting.

APPEAL from District Court, Weber County; M. L. Ritchie, Judge.

Contempt proceedings by the North Ogden Irrigation Company against George A. Fuller and others for violation of the decree in the action of William Geddes and others against the North Ogden Irrigation Company and others. From a judgment of contempt, Fuller and others appeal.

REVERSED, WITH DIRECTIONS.

*T. N. Kimball, George Halverson,* and *C. C. Richards* for appellants.

*W. L. Maginnis* and *John E. Bagley* for respondents.

The defendants George A. Fuller, Virgil B. Stallings, and Daniel Lindsay were proceeded against in the district court of Weber county by the North Ogden Irrigation Company for the alleged violation of a certain decree entered in said court. The affidavit upon which an attachment was issued and the defendants brought before the court, so far as material here, recites: "That on the 10th day of September, 1892, in an

action then pending in the predecessor of this court, to wit, the Fourth judicial district court of the territory of Utah, wherein William Geddes and others were plaintiffs, and the North Ogden Irrigation Company and others were defendants, and the trustees of the Eden Irrigation District were also defendants, a certain decree was made and entered by the court decreeing to North Ogden Irrigation Company sufficient water to fill a certain ditch . . . (giving size of ditch) date of appropriation as January 1, 1858, and also decreeing to the Eden Irrigation District, by its trustees, sufficient water to fill a certain ditch, fixing the date of appropriation thereof as June 1, 1862, and further decreeing each of said parties to be entitled to the exclusive use of so much of the water of Ogden river as will flow in their said ditches, according to the dates of their appropriation; that the first in point of time in appropriating said water and constructing said ditches are entitled to the first right in the water of said stream, and so on successively to the last appropriation. That in case the water is insufficient in said stream at any time to fill all of said ditches, then those having the junior appropriation shall turn into the natural channel of the stream all of the water diverted by them until sufficient is turned into said stream to supply the ditches of any prior appropriator in point of time, and such junior appropriator, and all persons acting in aid or assistance of them, are hereby enjoined and restrained from diverting any part of the waters of said river from the natural channel thereof," etc. It is further alleged in the affidavit that the defendants Fuller and Stallings are trustees of the Eden Irrigation District, and as such trustees had knowledge of the decree and injunction; and that the defendant Lindsay also had personal knowledge and notice of the same. The affidavit further recites that the defendants, "on the 3d day of August, 1905, . . . entered upon the bed of North Fork of Ogden river, and in violation of said decree and restraining order, and at a time when the water was insufficient in said stream to fill all of the ditches prior in point of time to the Eden Irrigation District appropriation, and was insufficient to furnish water to the North Ogden Irrigation Company, . . . did

willfully and intentionally . . . divert all the waters of the said North Fork of said Ogden river into the canal of the Eden Irrigation District to the exclusion of the plaintiff . .. regardless of said decree." The defendants answered, admitting that they did, at the time and place alleged in the affidavit, filed on behalf of complainant, willfully and intentionally "divert all of the waters of the North Fork of Ogden river into the canal of the Eden Irrigation District, but denied that they did so for the purpose of diverting the water of the Ogden river, or that they did thereby divert any of the water of said Ogden river." And they admitted that they threaten to continue to divert the waters of said North Fork, and that they are now so doing, but they denied that they are so doing regardless of the decree mentioned in said affidavit "or of any decree or injunction of this or any other court." A trial was had, and the defendants were found guilty of having violated the decree hereinbefore mentioned, and judgment was rendered against them for complainants' costs amounting to $114.50. To reverse the judgment defendants have appealed to this court.

McCARTY, C. J. (after stating the facts as above).

Practically the same questions are presented on this appeal that were raised and determined in the case of *Fuller et al. v. Sharp et al., ante,* p. 431, 94 Pac. 813. In fact that suit involved the very questions out of which this controversy arose, namely, the right of the Eden Irrigation District to divert the waters of North Fork of Ogden river during the dry or low-water season, which usually begins in June, and continues on through the irrigation season. The Ogden Irrigation Company, however, was not a party to that suit.

The record shows that the lands irrigated by the North Ogden Irrigation Company are situated in Salt Lake Valley and the company gets its supply of water from Ogden river. The lands of the Eden Irrigation District are situated in Ogden Valley and are supplied with water from the North Fork, a tributary of Ogden river. The dam of the Eden Irrigation District is situated about eight miles above the dam of the

North Ogden Irrigation Company. The junction of North Fork with Ogden river is about four miles below the Eden dam, and the evidence without conflict shows that during the dry or low-water season which usually begins in June, and continues on through the irrigation season, there is not sufficient water in North Fork at the Eden dam to flow down and through the natural channel of said North Fork to Ogden river in sufficient quantity to be of any material benefit to the North Ogden Irrigation Company and other appropriators lower down the stream. William Bostaph, a civil engineer, testified that he devoted almost his entire time in the year 1890 to measuring and observing the water of Ogden river and its tributaries, and that during the four years preceding the trial (August, 1905) he had spent most of each summer investigating the flow of the water in Ogden river and in particular the North and Middle Forks. Speaking of the North Fork he said: "I have been there this year (1905) and observed its condition, and measured it last year and every year since 1902. . . .. I have seen the water turned out of the Eden ditch into the natural channel four or five times, and in no instances . . . has the water gone through on the surface, and there was no increase in the natural flow that I could detect after that water was turned down until eighteen or twenty days when I observed a little increase in the stream on the west side (referring to a point on the stream a short distance above the junction of the North Fork with Ogden river)." Another witness testified, and his testimony is not contradicted: "That they (referring to complainant and other appropriators lower down the stream) had it turned out of the (Eden) ditch in July for two weeks and it wouldn't get there. . . . In 1901 and 1902, it was also turned out. It was out two or three weeks. None of it got through. It was turned out the following year and none of it got through (to Ogden river)." On cross-examination, he said: "There was a little run through in 1903; I could step across it, though eighteen or twenty feet was turned out (of Eden ditch) at dam. In 1902 eighteen feet was turned out, but it didn't go through."

The record further shows that during the season of high

water the Eden Irrigation District turns into its canal about forty-five second feet of water, which is spread over the lands of the district. From two to three weeks after irrigation begins in the Eden district springs and seepage water commence to rise at the lower end of the district. This spring and seepage water flows into the North and Middle Forks and from there into the Ogden river. In the fall of the year, soon after the water is turned from the Eden canal back into the natural channel of North Fork these springs and the seepage water cease flowing until after the water is again turned into the Eden canal and spread over the lands of the district. At times during the low-water period the springs and seepage water referred to amounts to about thirty second feet, all of which flows into Ogden river.

For a more full and complete statement of the facts and circumstances out of which this controversy arose reference is hereby made to the case of *Fuller et al. v. Sharp, et al., supra.* In that case, which, as hereinbefore stated, involved the rights of the Eden Irrigation District to take and divert all the water from the North Fork during the low-water season, the decree which the defendants in this action are charged with having violated was pleaded as *res adjudicata,* but this court held that the decree included the water in Ogden river and such streams only as would, when not turned from their natural channel, flow into said river. And, as we have observed, the evidence in this case shows that there is insufficient water in the North Fork at the Eden dam during the dry or low-water season to flow through the natural channel to Ogden river in quantity sufficient to be of any practical benefit to the appropriators lower down on the river. And furthermore, the court in *Fuller et al. v. Sharp et al., supra,* awarded to the North Ogden Irrigation Company, and other parties along Ogden river whose appropriations of water from said river were prior in time to that of the Eden Irrigation District, the amount of water from North Fork which the evidence in that case showed they were entitled to. And the decree further provides that, when the volume of water flowing in the North Fork at or near where it

empties into Ogden river is below a certain amount specified in the decree, the Eden Irrigation District "shall turn from its canal so much of the water of said North Fork at such point as may be most convenient for said district and economical for the conservation of the water, into said North Fork below said district's dam, as will make the quantity of water flowing at said point of measurement," equal to the amount awarded to North Ogden Irrigation Company, and other prior appropriators of the waters of said stream. No complaint is made that the decree in that case has not been strictly observed by the Eden Irrigation District, or the defendants herein. Under that decree the defendants, as representatives of the Eden Irrigation District, were authorized to turn all the water from the North Fork into the Eden Canal during the low-water season. Therefore, the findings of the trial court that defendants are in contempt because of their acts in the premises were erroneous.

The case is reversed, with directions to the trial court to set aside the judgment and to dismiss the proceedings. Costs to be taxed against respondents.

FRICK, J. (concurring).

I concur in the reversal of this case practically for the same reasons upon which I based by concurrence in the affirmance of the judgment in the *Fuller Case*. If, as we held, there was no interference with respondents' water rights, as found in the *Fuller Case*, then the appellants could not be guilty of contempt because they violated none of respondents' rights under what is known as the prior Geddes decree. Before one is adjudged guilty of contempt for violating a judgment or decree of a court, it should clearly be made to appear that he has invaded the terms of the decree. Nor does the fact that the respondent North Ogden Irrigation Company was not a party to the Fuller decree in any way affect the result. Both it and the appellants were parties to the Geddes decree. The Geddes decree was directly in issue in the *Fuller Case*, and the court in the latter case contrued and applied the Geddes decree, and determined its scope with regard to the very

acts involved in this proceeding. Undoubtedly what the court did in the *Fuller Case* in no way affects the rights of any one not a party to that case, but contempt proceedings are to compel obedience to the judgments of the court and to vindicate its authority and dignity, and not to vindicate the rights of a party. The rights of parties are merely incidental. It is a well-established rule that a party may not be proceeded against twice for the same act; that is, if an act is found to be either a contempt or not such, the judgment in that proceeding affords a complete protection against another proceeding for the same act. If we apply this rule to this proceeding it follows that the appellants cannot be adjudged in contempt for the same acts which the court held were not an invasion of the Geddes decree. If the acts were not wrongful as against one of the parties in the Geddes decree, the same acts cannot be a contempt of court as against any of the parties although they are not strictly bound by the Fuller decree. If one of the parties to the Geddes decree had instituted contempt proceedings against the appellants, and the court had found the acts complained of not a contempt, such a finding would bind all other parties to the Geddes decree, although not parties to the contempt proceedings. No one will dispute this. The mere fact that the acts involved in the *Fuller Case* were not complained of as being contemptuous does not alter the case. The acts were the very thing in issue, and the court found them justified. The same court may not in one proceeding find certain acts proper and in another proceeding, involving precisely the same acts and affecting the same rights, contemptuous. If the North Ogden Irrigation Company's rights have been invaded in view of the circumstances, it must seek redress by some other method than by contempt proceedings. The court found that the acts complained of were authorized, and entered a judgment to that effect. How can these very acts, although complained of by another party, be in contempt of court. They may be erroneous and may invade the rights of the other party, but they are not a contempt of court.

STRAUP, J.

I dissent. The transactions in this case are somewhat similar to those in the case of *Fuller et al. v. Sharp et al., ante,* p. 431. In this case Fuller and others who were plaintiffs in the other case, were proceeded against by the North Ogden Irrigation Company, not a party to the other case, for violating the decree of 1892, known as the Geddes decree. It was claimed that the appellants here violated the Geddes decree in the particular that they, as junior appropriators, diverted at their dam all the waters of the North Fork in the month of August, 1905, and at a time when the respondent, who was a prior appropriator, had not been supplied with the quantity of water awarded it by the Geddes decree. The Geddes decree established that the respondent was a prior appropriator and the appellants junior, and further adjudged that junior appropriators were enjoined from diverting any water from the natural channel except at such times and seasons as there might be a surplus of water after the prior appropriators had been supplied. The respondent, as established by the Geddes decree, was entitled to twenty-one and a fraction second feet of water. At the time in question, and when the appellants diverted all the water from the natural channel and ran it into their canal the respondent had only eleven second feet of water. The appellants diverted, and had running in their canal between twenty-one and thirty-two second feet of water. Respondent's crops were suffering for want of water and it greatly needed it. The appellants, whose appropriations were conceded to be junior to respondent's, therefore diverted water from the natural channel, and at a time and season when the respondent had not been fully supplied; and their action in so doing was a direct violation of the express terms of the Geddes decree. In my dissenting opinion in the *Sharp Case* I have more fully expressed my views to the effect that the acts of appellants in diverting all the water from the natural channel, and the decree in that case rendered giving them the right to do so, were invasions of the Geddes decree. I also think that the judgment of the court below in this case adjudging appellants guilty of contempt was right.

In the *Sharp Case* it is in effect held by a majority of the court that the defendants there had no cause to complain, for the reason that the decree, on the matters adjudicated at large, gave them all the water to which under the evidence, they were entitled. Now, in this case the judgment of the court below is reversed, and appellants' diversion of all the water from the natural channel held not to be in violation of the Geddes de-. cree because the appellants were authorized by the decree in the *Sharp Case* to divert at their dam all the waters from the natural channel of the North Fork. In other words, the defendants failed in the *Sharp Case* because—treating the matters at large—it was found that they got all the water to which they were entitled as shown by the evidence, and the respondent fails here because the acts which appellant did were afterwards authorized by the decree in the *Sharp Case;* and thus in neither case has the binding operation of the Geddes decree been given effect, nor the doctrine of *res adjudicata* applied. Furthermore, the adjudication in the *Sharp Case* could not affect the rights of the parties in this case because the respondent was not a party to the *Sharp Case.*

The question directly involved here was whether the acts of appellants, as junior appropriators, in turning all the water out of the natural channel when the respondent as a prior appropriator had not been fully supplied, were invasions of the Geddes decree, not the Sharp decree.